Nos. 24-1140, 24-1206, 24-1234

IN THE

# United States Court of Appeals for the Federal Circuit

VERSATA SOFTWARE, INC., fka Trilogy Software, Inc.,
VERSATA DEVELOPMENT GROUP, INC., TRILOGY, INC.,

*Plaintiffs-Appellants*,

v.

FORD MOTOR COMPANY,

*Defendant-Cross-Appellant*.

On Appeal from the United States District Court for the Eastern District of Michigan, No. 2:15-cv-10628, Hon. Judge Matthew F. Leitman

**REPLY BRIEF OF DEFENDANT-CROSS-APPELLANT FORD MOTOR COMPANY**

JOHN S. LEROY
THOMAS A. LEWRY
CHRISTOPHER C. SMITH
BROOKS KUSHMAN P.C.
1000 Town Center, 22nd Floor
Southfield, MI 48075
(248) 358-4400

JESSICA L. ELLSWORTH
WILLIAM E. HAVEMANN
DANA A. RAPHAEL
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5886
jessica.ellsworth@hoganlovells.com

November 20, 2024

*Counsel for Defendant-Cross-Appellant Ford Motor Company*

## CERTIFICATE OF INTEREST

Counsel for Ford Motor Company certifies the following pursuant to Federal Circuit Rule 47.4:

1. Represented Entities (Fed. Cir. R. 47.4(a)(1)) – Provide the full names of all entities represented by undersigned counsel in this case.

   **Ford Motor Company**

2. Real Party in Interest (Fed. Cir. R. 47.4(a)(2)) – Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   **Not Applicable.**

3. Parent Corporations and Stockholders (Fed. Cir. R. 47.4(a)(3)) – Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **Not Applicable.**

4. Legal Representatives – List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   - **Brooks Kushman P.C.**
     - Frank A. Angileri
     - Amy C. Leshan
     - Chanille Carswell
     - Chelsea Elizabeth Pasquali
     - John P. Rondini
     - Reza Roghani Esfahani

   - **Dickinson Wright PLLC**
     - Jonathan D. Nikkila

   - **Dykema Gossett**
     - James P. Feeney

- **Foley & Lardner LLP**
  - Alan J. Gocha

5. Related Cases – Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). *See also* Fed. Cir. R. 47.5(b).

   **Not Applicable.**

6. Organizational Victims and Bankruptcy Cases – Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

   **Not Applicable.**

Dated: November 20, 2024

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth

**TABLE OF CONTENTS**

Page

CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ iv

INTRODUCTION AND SUMMARY ........ 1

ARGUMENT ........ 4

I. FORD'S CROSS-APPEAL IS PROPER ........ 4

A. This Circuit And Other Circuits Recognize A Cross-Appeal Is The Appropriate Way To Challenge An Adverse Liability Ruling ........ 4

B. Versata's Arguments Against Jurisdiction Are Meritless ........ 8

II. FORD WAS ENTITLED TO JMOL ON TRADE-SECRET LIABILITY ........ 11

A. Versata Was Required To Establish That Ford Had Knowledge Of The Combination Trade Secrets, Not Merely Their Individual Components ........ 12

1. Versata errs in maintaining that it was not required to show "knowledge" of the combination trade secrets ........ 12

2. Versata's confidentiality argument is also wrong as a matter of law ........ 20

B. Versata Failed To Introduce Evidence Establishing That Ford Had Knowledge Of The Alleged Combination Trade Secrets ........ 22

CONCLUSION ........ 26

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Arconic Inc. v. Novelis Inc.*,
No. 2:17-cv-01434, 2020 WL 7247112 (W.D. Pa. Dec. 9, 2020)......................18

*Aventis Pharma S.A. v. Hospira, Inc.*,
637 F.3d 1341 (Fed. Cir. 2011) ...........................................................8, 10, 11

*Bailey v. Dart Container Corp. of Mich.*,
292 F.3d 1360 (Fed. Cir. 2002) ......................................................................8

*BBA Nonwovens Simpsonville, Inc. v. Superior Nonwovens, LLC*,
303 F.3d 1332 (Fed. Cir. 2002) ....................................................................13

*Big Vision Priv., Ltd. v. E.I. DuPont De Nemours & Co.*,
1 F. Supp. 3d 224 (S.D.N.Y. 2014) ........................................................*passim*

*Chiron Corp. v. Genentech, Inc.*,
363 F.3d 1247 (Fed. Cir. 2004) ....................................................................11

*Cook Indus., Inc. v. Barge UM-308*,
622 F.2d 851 (5th Cir. 1980) .........................................................................6

*Dawson v. Dawson*,
710 F.3d 1347 (Fed. Cir. 2013) ....................................................................11

*Ericsson, Inc. v. Harris Corp.*,
352 F.3d 1369 (Fed. Cir. 2003) ......................................................................8

*Flournoy v. Kelly*,
840 F.2d 16, 1988 WL 12137 (6th Cir. 1988) (per curiam)
(unpublished) ...............................................................................................6

*Garrison v. Cassens Transp. Co.*,
334 F.3d 528 (6th Cir. 2003) .......................................................................25

*Granite Mgmt. Corp. v. United States*,
416 F.3d 1373 (Fed. Cir. 2005) ..............................................................*passim*

**TABLE OF AUTHORITIES—Continued**

Page(s)

*Hendrix ex rel. United States v. J-M Mfg. Co.*,
76 F.4th 1164 (9th Cir. 2023) ....................6

*Heyman v. AR. Winarick, Inc.*,
325 F.2d 584 (2d Cir. 1963) ....................18

*Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*,
966 F.2d 847 (4th Cir. 1992) ....................6

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
714 F.3d 1289 (Fed. Cir. 2013) ....................2, 5, 6, 7

*Medidata Sol., Inc. v. Veeva Sys., Inc.*,
No. 1:17-cv-00589, 2021 WL 467110 (S.D.N.Y. Feb. 9, 2021)....................17

*Metzinger v. Dep't of Veterans Affs.*,
20 F.4th 778 (Fed. Cir. 2021) ....................10

*Newell Cos. v. Kenney Mfg. Co.*,
864 F.2d 757 (Fed. Cir. 1988) ....................10

*Next Commc'ns, Inc. v. Viber Media, Inc.*,
No. 1:14-cv-08190, 2017 WL 4402540 (S.D.N.Y. Sept. 30, 2017)....................22

*Next Commc'ns, Inc. v. Viber Media, Inc.*,
758 F. App'x 46 (2d Cir. 2018) ....................22

*Power Mosfet Techs., LLC v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004) ....................2, 6, 7, 8

*Praxair, Inc. v. ATMI, Inc.*,
543 F.3d 1306 (Fed. Cir. 2008) ....................11

*Quark, Inc. v. Harley*,
141 F.3d 1185, 1998 WL 161035 (10th Cir. 1998) (unpublished)....................6

*Radio Steel & Mfg. Co. v. MTD Prods., Inc.*,
731 F.2d 840 (Fed. Cir. 1984) ....................2

**TABLE OF AUTHORITIES—Continued**

Page(s)

*Sit-Up Ltd. v. IAC/InterActiveCorp.*,
No. 1:05-cv-09292, 2008 WL 463884 (S.D.N.Y. Feb. 20, 2008)..........13, 18, 22

*SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*,
491 F.3d 350 (8th Cir. 2007) ....................................................................21

*Symantec Corp. v. Comput. Assocs. Int'l, Inc.*,
522 F.3d 1279 (Fed. Cir. 2008) ...............................................................7, 11

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
556 F. Supp. 3d 222 (S.D.N.Y. 2021) ..................................................13, 14, 18

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*,
617 F. Supp. 2d 938 (N.D. Cal. 2007).......................................................*passim*

*United Int'l Investigative Servs. v. United States*,
109 F.3d 734 (Fed. Cir. 1997) ...............................................................5, 6, 7, 10

*United States ex rel. Purcell v. MWI Corp.*,
807 F.3d 281 (D.C. Cir. 2015).........................................................................6

**STATUTES:**

18 U.S.C. § 1839(5)(B)(ii)(II)..............................................................12, 19, 20

18 U.S.C. § 1839(5)(B)(iii)(I)...................................................................................19

Mich. Comp. Laws § 445.1902(b)(ii)(B)...................................................12, 19, 20

Mich. Comp. Laws § 445.1902(b)(ii)(C)..........................................................19

**RULES:**

Fed. R. App. P. 2(a) ..............................................................................................11

Fed. Cir. R. 27(f)....................................................................................................11

## TABLE OF AUTHORITIES—Continued

Page(s)

**OTHER AUTHORITIES:**

Tait Graves & Alexander Macgillivray, *Combination Trade Secrets and the Logic of Intellectual Property*, 20 Santa Clara Computer & High Tech. L.J. 261 (2004)....................14

Restatement (First) of Torts § 757 cmt. b (1939)....................21

Restatement (Third) of Unfair Competition (1995)
§ 40(b)(1)....................13, 19
§ 40(b)(2)....................19
§ 40(b)(3)....................19
§ 40(b)(4)....................19
§ 40 cmt. a....................17

## INTRODUCTION AND SUMMARY

If the Court affirms the District Court's grant of judgment as a matter of law (JMOL) to Ford on trade-secret damages, it need not address Ford's cross-appeal on trade-secret liability. But if this Court disagrees with the grant of JMOL on damages, it should address Ford's cross-appeal and reverse.

First, this Court has jurisdiction over the cross-appeal. Versata is wrong to argue that Ford should not have cross-appealed. This Court has held that a cross-appeal is not only appropriate, but required, in a posture materially indistinguishable from the posture here. *See Granite Mgmt. Corp. v. United States*, 416 F.3d 1373, 1378 (Fed. Cir. 2005) (because the defendant "did not cross-appeal on [the liability] issue, it cannot now raise it"). Ford cannot be faulted for adhering to precedent, particularly given the severe consequences of failing to cross-appeal where doing so is required. Equally incorrect, Versata claims it would not alter the parties' rights under the judgment if Ford prevails on its cross-appeal. But the District Court entered judgment "*[f]or Versata*" on trade-secret liability, Appx160 (emphasis added), and if Ford prevails on the cross-appeal, judgment would need to be entered *for Ford*. That is why Ford's opening brief urged the Court to "reverse" the judgment for Versata on liability if this Court reaches the question. Ford Br. 75.

Versata's assertion that this Circuit categorically prohibits conditional cross-appeals is puzzling. This Court has repeatedly held that "conditional" cross-appeals

are "proper[ ]" in appropriate cases. *Power Mosfet Techs., LLC v. Siemens AG*, 378 F.3d 1396, 1414 n.3 (Fed. Cir. 2004). An appropriate case is one where the cross-appealing party asks this Court to consider the cross-appealed issue only if the Court accepts the appellant's arguments in the principal appeal, and where accepting the cross-appellant's arguments would result in "reversal or modification of the judgment rather than affirmance." *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc*., 714 F.3d 1289, 1294 (Fed. Cir. 2013) (quoting *Radio Steel & Mfg. Co. v. MTD Prods., Inc*., 731 F.2d 840, 844 (Fed. Cir. 1984)). That is exactly the posture here. This Court need only consider Ford's arguments on liability if it accepts Versata's arguments on damages. But, if it does so, acceptance of Ford's cross-appeal argument will result in reversing the judgment rather than affirming it. Versata does not even cite, much less distinguish, this Court's precedents approving conditional cross-appeals in this circumstance.

Second, Versata's defense of judgment for Versata on trade-secret liability is legally and factually flawed. Versata concedes that "knowledge" of an alleged combination trade secret is an element of a claim under both the Defend Trade Secrets Act (DTSA) and Michigan Uniform Trade Secrets Act (MUTSA). But according to Versata, a plaintiff can prove that element by showing knowledge of each component in isolation and need not prove knowledge of the *combination*. That approach contravenes the plain text of the statutory "knowledge" requirement, which

requires knowledge *of the trade secret itself*—that is, the unique combination of specific components—not the separate components. Versata's approach also violates the common-law tradition that the DTSA and MUTSA codified, which requires disclosure with "particularity." *Big Vision Priv., Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 257-262 (S.D.N.Y. 2014). And Versata's approach would lead to untenable results. It would mean, for example, that a party could prevail where it disclosed a few supposedly protected elements scattered across an ocean of other information, with no way for the defendant to distinguish what was protected from what was unprotected and with no way to know how to combine the elements into the alleged trade secrets. Numerous courts have rejected this view, and the cases Versata cites undermine rather than support it.

Contrary to Versata's caricature (at 51), Ford's position is not that Versata had "to draw big red circles around the information" Versata says formed trade secrets. What was required was some evidence that Ford knew the combination of isolated components scattered over many years through thousands of pages of documents constituted each allegedly protectable trade secret. As a factual matter, Versata abjectly failed to make such a showing. The District Court observed that "Versata only pointed over and over to a mountain of user guides and other documents" it gave Ford over the span of nearly a decade "and asserted that all the elements of each combination were individually in there somewhere." Appx133

(cleaned up); *see* Appx56178. The trial evidence cited in Versata's brief similarly consists of conclusory testimony from Versata witnesses that disclosure of the voluminous user guides and presentations somehow amounted to disclosure of the asserted combination trade secrets. No Versata witness offered any testimony whatsoever about how Ford could have derived Versata's made-for-litigation combinations from that mountain of documents provided over many years. The best evidence that this information could not have given rise to knowledge on Ford's part is that *even Versata's own high-level employees* could not identify which elements composed each combination at trial. Versata's evidence did not suffice to show knowledge, and, if it reaches the question, this Court should accordingly reverse the District Court's judgment for Versata on trade-secret liability.

## ARGUMENT

### I. FORD'S CROSS-APPEAL IS PROPER.

#### A. This Circuit And Other Circuits Recognize A Cross-Appeal Is The Appropriate Way To Challenge An Adverse Liability Ruling.

This Court has jurisdiction over Ford's conditional cross-appeal. The District Court entered judgment "[f]or Versata" on trade-secret misappropriation after denying JMOL to Ford on liability, but awarded Versata "$0 in damages" on that claim. Appx160. Versata appealed the damages ruling, while Ford conditionally cross-appealed the denial of JMOL on liability. This Court has deemed a cross-appeal not only appropriate, but required, in indistinguishable circumstances.

"It is well-settled that a party must file a cross-appeal if, although successful in the overall outcome in the district court, the party seeks, on appeal, to lessen the rights of its adversary or to enlarge its own rights." *Lazare*, 714 F.3d at 1293. This Court has held that includes cases where the cross-appellant lost on liability but prevailed on damages. *Granite Mgmt.*, 416 F.3d at 1378-80, 1383.

In *Granite Management*, a breach-of-contract case, the trial court held on summary judgment that the plaintiff had proved the government breached a contract, but the plaintiff had "failed to prove its damages." *Id.* at 1383. The plaintiff appealed the trial court's refusal to award damages. As the appellee, the government disputed the trial court's ruling on liability, arguing that the government had "committed no breach." *Id*. at 1378. This Court held that "[b]ecause the government did not cross-appeal on [the liability] issue, it cannot now raise it." *Id.* The Court explained that "the government's argument is not made as an alternative ground for affirmance of the judgment," and instead "the government is seeking to modify or change the judgment of the trial court," necessitating a cross-appeal. *Id.*

This Court reached a similar conclusion in *United International Investigative Services v. United States*, 109 F.3d 734 (Fed. Cir. 1997). There, the trial court held the plaintiff-company proved the government was liable for a defective contract, but awarded no damages because the plaintiff "failed to prove that it suffered any resulting damages." *Id.* at 737. The plaintiff "appeal[ed] the damages finding and

the government cross-appeal[ed] the conclusion" on liability. *Id*. This Court exercised jurisdiction over the cross-appeal, held the government not liable, and "reversed" the judgment that had been entered for the plaintiff-company below. *Id.* at 738.

This Court's cases are in line with other circuits, which have similarly addressed a defendant's liability on cross-appeal even where no damages were awarded. *See, e.g.*, *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 283 (D.C. Cir. 2015); *Hendrix ex rel. United States v. J-M Mfg. Co.*, 76 F.4th 1164, 1171 (9th Cir. 2023); *Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 849 (4th Cir. 1992); *Cook Indus., Inc. v. Barge UM-308*, 622 F.2d 851, 854 (5th Cir. 1980); *Flournoy v. Kelly*, 840 F.2d 16, 1988 WL 12137, at *2 (6th Cir. 1988) (per curiam) (unpublished); *Quark, Inc. v. Harley*, 141 F.3d 1185, 1998 WL 161035, at *1, *6 (10th Cir. 1998) (unpublished).

Ford's cross-appeal was therefore required in the circumstances of this case, and this Court's precedents confirm that the cross-appeal was properly designated *conditional*. A conditional cross-appeal means that the cross-appealing party asks this Court to consider the cross-appealed issue only if the Court accepts the appellant's arguments in the principal appeal; in other words, the "outcome" of the principal appeal "determine[s] whether that conditional cross-appeal [i]s reached." *Lazare*, 714 F.3d at 1297. In *Power Mosfet*, for example, the plaintiff appealed the

district court's judgment of noninfringement, while the defendants conditionally cross-appealed the rejection of their invalidity arguments. This Court held that "although conditional, [the] cross-appeals are properly before us." 378 F.3d at 1414 n.3. The Court explained that "the argument against the district court's invalidity determination could not have been made if a cross-appeal had not been filed, as acceptance of the argument would result in a modification of the district court's judgment." *Id.*; *accord Symantec Corp. v. Comput. Assocs. Int'l, Inc.*, 522 F.3d 1279, 1294 n.8 (Fed. Cir. 2008) ("a cross-appeal is necessary" to assert invalidity on review of a judgment of noninfringement). Thus, the conditional nature of the cross-appeal did not "render it improper." *Power Mosfet*, 378 F.3d at 1414 n.3; *see also Lazare*, 714 F.3d at 1297 (noting that a party "could have filed a conditional cross-appeal" to preserve its rights in similar circumstances).

Like the challenges to liability in *Granite Management* and *United International*, Ford's challenge to the denial of JMOL on liability "seeks to change or modify the judgment rather than just affirm it." *Granite Mgmt.*, 416 F.3d at 1378. Ford therefore "must file a cross-appeal." *Id.* And, as in *Power Mosfet*, this Court need only reach the cross-appealed issue if it reverses the District Court's decision on damages. This Court therefore has jurisdiction over Ford's conditional cross-appeal.

### B. Versata's Arguments Against Jurisdiction Are Meritless.

Versata insists that this Court's precedents forbid "conditional cross-appeals as 'improper.'" Versata Resp. 43 (citation omitted). This Court has rejected the same argument multiple times. *See Power Mosfet*, 378 F.3d at 1414 n.3 ("The fact that the cross-appeal was conditional does not alone render it improper."); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1376 (Fed. Cir. 2003) (party's "cross-appeal, although conditional, is therefore properly before us"). Versata simply ignores this Court's precedents approving conditional cross-appeals.

Versata contends (at 43) that this Court's decisions in *Bailey v. Dart Container Corp. of Michigan*, 292 F.3d 1360 (Fed. Cir. 2002), and *Aventis Pharma S.A. v. Hospira, Inc.*, 637 F.3d 1341 (Fed. Cir. 2011), reject "[s]o-called 'conditional cross-appeal[s].'" Neither does. As this Court explained, the "concerns at issue in *Bailey*" were not that the appellee labeled its cross-appeal conditional, but that "the arguments contained in the cross-appeal could have properly been advanced" as alternative grounds for affirmance. *Power Mosfet*, 378 F.3d at 1414 n.3. The same is true of *Aventis*: It was "improper to use a cross-appeal to seek review of either non-infringement or alternative invalidity arguments when the relevant claims of a patent [we]re found invalid." 637 F.3d at 1342. The "conditional" label was not the problem, but rather the fact that—unlike here—the issues should have been raised as "alternative grounds for affirming the judgment on appeal." *Id.* at 1343.

Versata asserts that Ford's cross-appeal seeks only to "'*affirm*[] the judgment'" by changing the reason for "granting Ford judgment." Versata Resp. 44-45 (citation omitted). Versata is incorrect. Final judgment was not entered for Ford; it was entered "*[f]or Versata* on its claims for misappropriation of the Grid, Buildability, and Workspaces combination trade secrets," with an award of "$0." Appx160 (emphasis added). Prevailing on the cross-appeal would require modifying that judgment so that it is entered for Ford, not Versata. While Versata claims (at 44) that Ford's filings confirm "that it believes the judgment should be affirmed as-is," the opposite is true; indeed, Ford explained "if this Court reaches Ford's conditional cross-appeal, it should *reverse*." Ford Br. 4 (emphasis added).

Versata attempts (at 47) to limit *Granite Management* to circumstances involving "two separate summary-judgment orders" on liability and damages. But *Granite Management* itself rejected that distinction, explaining that the "circumstances" of separate summary-judgment decisions did "not warrant an exception to the general rule that without itself appealing, an appellee cannot seek a change in the judgment under review." 416 F.3d at 1379-80. While Versata contends (at 43) that ruling for Ford on liability "would neither expand Ford's rights nor lessen Versata's," the *Granite Management* dissent made the same contention, *see* 416 F.3d at 1385 (Clevenger, J., dissenting in part), which the majority rejected. Ultimately, Versata effectively concedes it cannot distinguish *Granite Management*,

and urges this Court (at 49) to adopt the dissent's view that a cross-appeal should have been "precluded." But this Court is "bound by prior panel decisions of this court unless and until overturned en banc." *Metzinger v. Dep't of Veterans Affs.*, 20 F.4th 778, 781 (Fed. Cir. 2021) (citing *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988)). *Granite Management* is conclusive, and Ford can hardly be faulted for following this Court's precedents.

Ford's cross-appeal looks nothing like the scenarios in which this Court has cautioned against attempts "to game the system by filing a cross-appeal," such as where precedent "prohibits exactly the type of cross-appeal filed." *Aventis*, 637 F.3d at 1343; *see* Versata Resp. 32, 45. Ford sought to preserve its rights, consistent with *Granite Management* and *United International*, not to game the system. Parties should not be penalized for cross-appealing where this Court's precedents provide a reasonable basis to conclude a cross-appeal is necessary—particularly given the severe consequences of failing to cross-appeal where doing so is required. *See Granite Mgmt.*, 416 F.3d at 1379-80; *see also id.* at 1378 ("a party will not be permitted to argue before us an issue on which it has lost and on which it has not appealed" (quotation marks omitted)).

Should the Court determine a cross-appeal was unnecessary, it should dismiss the cross-appeal and treat Ford's trade-secret-liability argument as an alternative ground for affirming the judgment, consistent with its practice in comparable cases.

*See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1252 (Fed. Cir. 2004) ("Although styled as a cross-appeal, this court treats this claim construction issue as an alternative ground for affirming the judgment."); *accord Symantec Corp.*, 522 F.3d at 1294; *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1322 (Fed. Cir. 2008); *Dawson v. Dawson*, 710 F.3d 1347, 1352 (Fed. Cir. 2013); *see also* Fed. R. App. P. 2(a).[1]

## II. FORD WAS ENTITLED TO JMOL ON TRADE-SECRET LIABILITY.

Ford's opening brief explained (at 72-73) that Versata failed to establish that it disclosed its combination trade secrets to Ford. As the District Court observed, Versata instead "only pointed over and over to a mountain of user guides and other documents and asserted that all the elements of each combination were individually in there somewhere." Appx133 (cleaned up). Versata does not dispute—indeed, concedes (at 51)—that it never disclosed its trade secrets to Ford as the combinations it identified at trial. Versata instead maintains that it sufficed to disclose each

[1] Versata obliquely suggests (at 50) that this Court should sanction Ford by "not reach[ing] the issue" of liability raised on cross-appeal, but Versata does not attempt to justify that extraordinary request. Although now complaining that Ford's notice of appeal made "clear[ ]" that Ford's cross-appeal is "foreclose[d]," Versata Resp. 44 (citing Appx42523-42524), Versata never moved to dismiss the cross-appeal. *See* Fed. Cir. R. 27(f) ("A motion to dismiss for lack of jurisdiction . . . should be made as soon as the grounds for the motion are known."); *Aventis*, 637 F.3d at 1342. Versata instead availed itself of the opportunity to file a full-length response and reply brief under the cross-appeal rules.

individual component of its combination trade secrets, without any indication of which parts of the mountain of materials were trade secrets or how they fit together.

Versata's argument fails as a matter of law. Versata claimed that Ford misappropriated *combination* trade secrets, where individual components are unprotected and only the unique combination of those components constitutes a trade secret. The plain text of the DTSA and MUTSA required Versata to prove that Ford had "knowledge" of how those components combined to create each allegedly protectable trade secret. The evidence at trial did not suffice to establish Ford's knowledge.

## A. Versata Was Required To Establish That Ford Had Knowledge Of The Combination Trade Secrets, Not Merely Their Individual Components.

### 1. Versata errs in maintaining that it was not required to show "knowledge" of the combination trade secrets.

Versata maintains (at 53) that it was under no obligation to "provide evidence" that "Ford had 'knowledge' of the precise combinations" that Versata, late in this litigation, identified as trade secrets. That argument fails as a matter of law.

Versata does not dispute that both the DTSA and MUTSA require "knowledge of the trade secret" "at the time of disclosure or use." 18 U.S.C. § 1839(5)(B)(ii)(II); *see* Mich. Comp. Laws § 445.1902(b)(ii)(B). This statutory "knowledge" requirement means that a defendant can be liable only if it "knows or has reason to

know that the information is a trade secret." Restatement (Third) of Unfair Competition § 40(b)(1) (1995).

This knowledge requirement takes on special importance in the context of combination trade secrets, where a defendant must have "knowledge of the combination" itself. *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 943 (N.D. Cal. 2007). Unlike ordinary trade secrets, any individual component within a combination trade secret is not legally protected as a trade secret "by itself." *BBA Nonwovens Simpsonville, Inc. v. Superior Nonwovens, LLC*, 303 F.3d 1332, 1339 (Fed. Cir. 2002) (citation omitted). For a defendant to "know what constitutes a plaintiff's trade secret" in this context, the combination—not just the individual components—must be disclosed such "that the party to whom the secret is revealed understands the contours of the secret information." *Big Vision*, 1 F. Supp. 3d at 257-258 (citation omitted); *see also Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 1:05-cv-09292, 2008 WL 463884, at *10 (S.D.N.Y. Feb. 20, 2008) ("compilation trade secrets are protectable but . . . the law requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed and to show that its compilation is unique"). "This requirement is essential to trade secret law"; otherwise, "[t]he defendant has no way to know—short of guessing—exactly what information is claimed as a trade secret." *Town &*

*Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 270 (S.D.N.Y. 2021).

The plain text of the DTSA and MUTSA therefore require sufficient evidence to conclude that the defendant had knowledge of the combination. Even where the defendant has knowledge of the individual components, it "may never have known about the plaintiff's combination at all" or "may only have known about some part of its elements and not the complete set of them." Tait Graves & Alexander Macgillivray, *Combination Trade Secrets and the Logic of Intellectual Property*, 20 Santa Clara Computer & High Tech. L.J. 261, 284 (2004). In other words, the defendant must "know of and intend to misappropriate the combination qua combination." *Id*. at 283. Merely knowing about each separate component does not suffice.

That explains why, in cases where plaintiffs "disclose only elements and not" specific secret "combinations," the defendant's "'knowledge' of a secret combination will depend on how easy or difficult it is to piece together," not merely whether the defendant had knowledge of each separate component. *UniRAM*, 617 F. Supp. 2d at 943. If, for example, "the Coca-Cola formula consists of a combination of ten nonsecret ingredients, then a document which lists those ten ingredients in the middle of a sea of other chemicals might not constitute adequate disclosure of the formula because the precise recipe would be too difficult to derive."

*Id.* Similarly, if, as here, those ten ingredients are listed piecemeal in various locations across many documents, it becomes effectively impossible to derive the trade secret.

A contrary approach would lead to results that are obviously untenable. A party could, for example, claim misappropriation of a combination trade secret where it disclosed individual components of the trade secret scattered across thousands of pages of documents, with no way for the counterparty to know which combinations of components were supposedly protectable as trade secrets.

Versata maintains (at 51, 57) that the statutory "knowledge" requirement means only that the defendant must have knowledge of the individual trade-secret components, but need not have the knowledge necessary to combine these components into a trade secret itself. This argument fails as a matter of law because it ignores the difference between individual and combination trade secrets. Where a party claims a combination trade secret, the trade secret is *the combination*, not the components. Versata's counsel expressly acknowledged as much when pivoting to the combination theory. Appx54845.

The cases Versata cites undermine rather than support its position. For example, *UniRAM* did not, as Versata claims (at 57), "reject[ ]" the argument that a defendant must "know [the] boundaries" of a combination trade secret. *UniRAM* rejected only that a trade-secret plaintiff "must disclose its elements and secret

combinations in 'a single form or on a single occasion.'" 617 F. Supp. 2d at 941-942 (citation omitted). The court likened the knowledge requirement to obviousness in patent law, explaining that while "knowledge of the combination" does not necessarily require disclosure in "a single integrated document," it can be established "as long as one skilled in the art could view the nonsecret elements and replicate the combination without undue difficulty." *Id.* at 942-943. That requires evidence of "how easy or difficult it is to assemble the relevant elements into the secret combination," not—as Versata contends—merely whether the alleged misappropriator possessed knowledge of each separate component. *Id.* at 943. Just as interspersing the ingredients for Coca-Cola amidst "a sea of other chemicals" is inadequate disclosure, it is not enough that Versata put on evidence that it disclosed each individual component of its combination trade secrets across thousands of pages of multiple documents, without establishing any reason to believe that Ford knew how these specific components could be "piece[d] together" into trade secrets. *See id.*

*UniRAM* is consistent with *Big Vision*, which likewise explained that a "defendant must know what constitutes a plaintiff's trade secret." 1 F. Supp. 3d at 257. Versata asks this Court (at 58) to disregard *Big Vision* because it applied New York common law rather than a state or federal Uniform Trade Secret Act. But common law rules are "consistent with and applicable to actions under the Uniform

Trade Secrets Act." Restatement (Third) of Unfair Competition § 40 cmt. a. The "elements of a misappropriation claim are substantively the same under the DTSA/New York law and the [ ] Uniform Trade Secrets Act." *Medidata Sol., Inc. v. Veeva Sys., Inc.*, No. 1:17-cv-00589, 2021 WL 467110, at *2 & n.1 (S.D.N.Y. Feb. 9, 2021); *see also id.* at *2 ("courts often rely on cases discussing New York law to analyze DTSA claims").

Versata wrongly argues (at 58-59) that *Big Vision* is limited to addressing a party's disclosure obligations during litigation. But *Big Vision* held that a plaintiff must "describe[ ] its trade secret with sufficient particularity, *both* at the time of disclosure and throughout the litigation." 1 F. Supp. 3d at 257 (emphasis added); *see also id.* at 259 (concluding that "the trade secret was not described with particularity at the time of disclosure" (capitalization altered)); *id.* at 262 (separately concluding that most "elements of the trade secret were described with insufficient particularity during litigation" (capitalization altered)). That dual requirement makes sense, because specificity at the time of disclosure is antecedent to specificity in litigation: "Specificity is required at the moment of divulging so that the party to whom the secret is revealed understands the contours of the secret information," and, "[s]imilarly, specificity is required before the court so that the defendant can defend himself adequately against claims of trade secret misappropriation, and can divine the line between secret and nonsecret information, and so that a jury can render a

verdict based on a discriminating analysis of the evidence of disclosure and misappropriation." *Id.* at 258 (quoting *Sit-Up*, 2008 WL 463884, at *11).

Versata's suggestion (at 60) that there is "no other case, before or since *Big Vision*, requiring plaintiffs to set out the metes and bounds of combination trade secrets at the time of disclosure" is wrong. *Sit-Up*, on which *Big Vision* relied, required specificity "at the moment of divulging so that the party to whom the secret is revealed understands the contours of the secret information." 2008 WL 463884, at *11. *Sit-Up* drew that requirement from *Heyman v. AR. Winarick, Inc.*, 325 F.2d 584 (2d Cir. 1963), which required a plaintiff's "disclosure of a trade secret" be with "particularity," because anything less would be "so vague and indefinite as not to be entitled to protection under the law of trade secrets," *id.* at 590. *UniRAM*, too, held that "a defendant's 'knowledge' of a secret combination will depend on how easy or difficult it is to piece together" from the plaintiff's disclosures. 617 F. Supp. 2d at 943. And other courts applying the DTSA and/or state versions of the Uniform Trade Secrets Act likewise agree that "[a]t the time of disclosure, there must be sufficient specificity for the party to whom the secret is revealed to understand the contours of the claimed trade secret information so it does not transgress its boundaries." *Arconic Inc. v. Novelis Inc.*, No. 2:17-cv-01434, 2020 WL 7247112, at *11 (W.D. Pa. Dec. 9, 2020); *see also Town & Country*, 556 F. Supp. 3d at 270. In contrast, Versata cites no case adopting its view that it suffices to disclose the

individual components of a combination trade secret, without any evidence that the defendant would know those elements formed different combination trade secrets, or how.

Finally, Versata makes much of statutory variations in phrasing between types of trade-secret misappropriation, claiming (at 55) that the knowledge requirement for trade secrets acquired by accident or mistake—that "the trade secret was a trade secret," 18 U.S.C. § 1839(5)(B)(iii)(I); *see* Mich. Comp. Laws § 445.1902(b)(ii)(C) (similar)—must mean that the knowledge requirement differs for trade secrets acquired through other means. But the statutory provisions applicable to Versata's claims in this case likewise require "at the time of disclosure or use, . . . knowledge of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(II); *see* Mich. Comp. Laws § 445.1902(b)(ii)(B). Just like for trade secrets acquired by accident or mistake, the provisions applicable here require proof that the defendant "knows or has reason to know that the information is a trade secret." Restatement (Third) of Unfair Competition § 40(b)(1), (4). Indeed, the Restatement—which is "consistent with and applicable to actions under the Uniform Trade Secrets Act," *id.*, cmt. a—uses that same wording for all types of trade-secret misappropriation, *id.* § 40(b)(1)-(4). Versata cites no case that would support reading minor variations in phrasing as establishing vastly different legal requirements.

### 2. Versata's confidentiality argument is also wrong as a matter of law.

Versata claims (at 52-53) that because the Master Subscription and Services Agreement (MSSA) "required" confidentiality of Versata's information generally, that "should end the matter." But both the DTSA and MUTSA make clear that confidentiality and knowledge are separate elements of misappropriation. The statutes define "misappropriation" to require, as relevant, both (1) "knowledge of the trade secret" *and* (2) a duty on the part of the defendant "to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(II); *see* Mich. Comp. Laws § 445.1902(b)(ii)(B). The existence of confidentiality obligations in the MSSA does not answer the predicate question whether Ford had the requisite "knowledge of the trade secret" in the first place. The jury was accordingly instructed that it had to find both that "Ford had knowledge of the alleged combination trade secret," and, separately, that Ford had a "duty to maintain the secrecy of the trade secret." Appx56984.

Versata's approach conflates confidentiality and knowledge. Versata, like the plaintiff in *Big Vision*, "uses 'trade secret' and 'confidential' as if the terms were interchangeable, but they are not": "the confidentiality of [a party's] information . . . does not transform that information into trade secrets." *Big Vision*, 1 F. Supp. 3d at 262. Underscoring the problem, Versata's insistence (at 56) that Ford "*knew* it was obtaining Versata's trade secrets" cites the MSSA's confidentiality provisions. But

not all information subject to a confidentiality agreement is a protectable trade secret—let alone a combination trade secret. A trade secret "differs from other secret information in a business," Restatement (First) of Torts § 757 cmt. b (1939), and parties' contractual agreements "may protect broader categories of information than trade secrets," *SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, 491 F.3d 350, 354 (8th Cir. 2007). Indeed, Versata represented in the proceedings below that "Versata's confidential information was broader and more inclusive than the misappropriated trade secrets." Appx41914-41917. If a confidentiality agreement sufficed to establish misappropriation, every case involving a contractual breach of a confidentiality provision would automatically amount to trade-secret misappropriation.

Versata resorts to hyperbole—predicting (at 61) that requiring knowledge would force businesses "to hire counsel to perfectly define" their trade secrets. To the contrary, the law merely required Versata to have "notified [Ford] of its trade secret"; Versata "need not have said the words 'trade secret,' or put forth the same degree of detail as would be appropriate in litigation, but it must have done *something*" to indicate what its trade secrets were. *Big Vision*, 1 F. Supp. 3d at 260-261. Proving knowledge in this context did not, as Versata claims (at 57), require Versata to prove to the jury that Ford had knowledge of the "boundaries down to an inch." But it did require Versata to adduce evidence from which a reasonable jury

could conclude that Ford would have had a basis to "piece together" as a trade secret the combination from the components disclosed. *UniRAM*, 617 F. Supp. 2d at 943. Yet Versata's only evidence—its mountain of user guides and presentations—"neither describe[d] trade secrets with particularity nor explain[ed] how various components fit together to form compilation trade secrets." *Next Commc'ns, Inc. v. Viber Media, Inc.*, No. 1:14-cv-08190, 2017 WL 4402540, at *5 (S.D.N.Y. Sept. 30, 2017), *aff'd*, 758 F. App'x 46 (2d Cir. 2018).

### B. Versata Failed To Introduce Evidence Establishing That Ford Had Knowledge Of The Alleged Combination Trade Secrets.

Versata failed to provide evidence from which a reasonable jury could conclude that Ford knew how the various components of Versata's supposed trade secrets could be pieced together. Versata therefore simply repeats the same evidence that Ford already explained was insufficient as a matter of law—a scattering of separate elements in and among "user guides," "presentations," and Ford's use of the software—without explaining how any of these sources could give rise to knowledge of the trade secrets as combinations. Versata failed to disclose how "various components fit together as building blocks in order to form the unique whole." *Sit-Up*, 2008 WL 463884, at *9 (citation and quotation marks omitted). Indeed, Versata's own witnesses could not identify the combination trade secrets at trial, which underscores that Versata's disclosures could not have given rise to knowledge on Ford's part.

Versata responds by quoting (at 62) the District Court's observation that Malek testified that "Versata disclosed the trade secrets as combinations to Ford *through its user guides and presentations to Ford*." (emphasis altered) (quoting Appx134). But merely conveying all the pieces of combination trade secrets is not evidence of a recipient's "knowledge of the combination." *UniRAM*, 617 F. Supp. 2d at 943. Versata says (at 63) that Malek identified other ways Ford could have learned of Versata's combination trade secrets, but in straining to identify supposedly distinct disclosures, Versata never says how it disclosed how separate bundles of features fit together as separate "combination" trade secrets.

Versata pivots to Krauss, saying (at 63) that Krauss "explained 'the content' of communications disclosing Versata's trade secrets," followed by a string of record citations. But the portions of the trial transcript Versata cites reflect that Krauss pointed only to the same mountain of "manuals and other technical documentation that Versata provided to Ford that contained the key features." Appx56174-56175. As Versata's trial exhibit reflects, these "key features" were isolated and spread across "approximately 2,000 pages," *id.*:




Appx67777.

It was only in litigation, many years after the myriad documents were provided to Ford, that Versata plucked out various elements and asserted they formed combination trade secrets—all in an effort to save Versata's damages model. *See* Ford Br. 12-13. But in pursuing Versata's made-for-litigation trade secrets, it was not enough for Versata to gesture at thousands of pages of documents that merely "contained" pieces of trade secrets hidden among many thousands of other pieces of information, Appx56174, without disclosing how those pieces fit together as combinations. As Ford explained in its opening brief, none of these documents disclosed the particular bundles of protected features that Versata now calls trade secrets. Versata does not dispute, for example, that its "user guides" did not identify

the components of each trade secret as even related to each other—and instead mixed-and-matched features that Versata now says are part of different trade secrets entirely. *See* Ford Br. 69-70. That kind of "disclosure was so 'vague and indefinite' that, as a matter of law, [Ford] could not have been on notice of [Versata's] alleged trade secret[s]." *Big Vision*, 1 F. Supp. 3d at 261.

Versata cannot fall back (at 1, 63) on the "deferential JMOL standard" to gloss over the absence of evidence. In *Garrison v. Cassens Transport Co.*, the district court "disagreed with the verdict," stating that it was "both 'dumbfounded' and 'surprised' by the result," but declined to grant JMOL because it believed that "the law really doesn't favor setting aside a jury verdict." 334 F.3d 528, 538 (6th Cir. 2003). The Sixth Circuit reversed because "careful review of the extensive appellate record convince[d] [the court] that the evidence presented to the jury was insufficient to support a finding of liability"—a conclusion necessitating that JMOL "be granted." *Id.* at 537-538 (quotation marks omitted). The District Court here similarly noted that it "was convinced during trial" "that Versata did not persuasively establish that it ever meaningfully disclosed the trade secrets—as the combinations identified at trial—to Ford," and that if it "had been sitting as a juror," it would have found for Ford. Appx133-134. As in *Garrison*, the District Court's first instinct was correct. The verdict on liability should have been set aside.

## CONCLUSION

For the foregoing reasons, should the Court reach Ford's conditional cross-appeal, it should reverse the judgment on trade-secret-misappropriation liability and enter judgment for Ford.

Respectfully submitted,

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth
William E. Havemann
Dana A. Raphael
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5886
jessica.ellsworth@hoganlovells.com

John S. LeRoy
Thomas A. Lewry
Christopher C. Smith
BROOKS KUSHMAN P.C.
1000 Town Center, 22nd Floor
Southfield, MI 48075
(248) 358-4400

*Counsel for Defendant-Cross-Appellant Ford Motor Company*

November 20, 2024

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing with the United States Court of Appeals for the Federal Circuit through the CM/ECF system on November 20, 2024. All case participants are registered CM/ECF users, and the Notice of Docketing Activity generated by this filing constitutes service under Fed. Cir. R. 25(e)(1).

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth

*Counsel for Defendant-Cross-Appellant Ford Motor Company*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Fed. Cir. R. 28.1(b)(3). Excluding the items exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), this brief contains 5,867 words.

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman, a proportionally-spaced font.

Dated: November 20, 2024

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth

*Counsel for Defendant-Cross-Appellant Ford Motor Company*