# United States Court of Appeals for the Federal Circuit

---

**VERSATA SOFTWARE, LLC., FKA TRILOGY SOFTWARE, INC., VERSATA DEVELOPMENT GROUP, INC., TRILOGY, LLC.,**
*Plaintiffs-Appellants*

**v.**

**FORD MOTOR COMPANY,**
*Defendant-Cross-Appellant*

---

2024-1140, 2024-1206, 2024-1234

---

Appeals from the United States District Court for the Eastern District of Michigan in No. 2:15-cv-10628-MFL-EAS, Judge Matthew F. Leitman.

---

Opinion Issued: May 22, 2026
Opinion Modified: September 10, 2026

---

JEFFREY A. LAMKEN, MoloLamken LLP, Washington, DC, argued for plaintiffs-appellants. Also represented by JENNIFER ELIZABETH FISCHELL, MICHAEL GREGORY PATTILLO, JR.; THOMAS P. SCHUBERT, EUGENE ALEXIS SOKOLOFF, Chicago, IL; MATTHEW R. CARTER, DAN K. WEBB, SAMUEL ZUIDEMA, Winston & Strawn LLP, Chicago, IL; STEVEN J. MITBY, Mitby Pacholder Johnson PLLC, Houston, TX; JAYE QUADROZZI, I, Varnum LLP, Birmingham, MI; SHAROON SALEEM, Jones & Spross, PLLC, Austin, TX.

JESSICA L. ELLSWORTH, Hogan Lovells US LLP, Washington, DC, argued for defendant-cross-appellant. Also represented by DANA A. RAPHAEL; WILLIAM HAVEMANN, Milbank LLP, Washington, DC; JOHN S. LEROY, THOMAS A. LEWRY, CHRISTOPHER C. SMITH, Brooks Kushman PC, Southfield, MI.

---

Before MOORE, *Chief Judge*, TARANTO and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Versata Software, LLC fka Trilogy Software, Inc.; Versata Development Group, Inc.; and Trilogy, LLC appeal a decision of the United States District Court for the Eastern District of Michigan on damages for trade secret misappropriation and breach of contract. For the reasons below, we vacate the district court's judgment on trade secret damages and remand for a new trial with instructions for the district court to consider two damages models it previously rejected. With respect to the breach of contract damages, we reverse the district court's judgment and reinstate the jury award. Lastly, we affirm the district court's denial of Ford's motion for judgment as a matter of law on liability for trade secret misappropriation.

## I

Ford Motor Company (Ford) hired Versata Software, LLC, fka Trilogy Software, Inc.; Versata Development Group, Inc.; and Trilogy, LLC (collectively, Versata) to develop computer software that would allow Ford to more efficiently enable vehicle configuration. Versata created two pieces of software: the Automotive Configuration Manager (ACM) and the Materials Cost Analytics (MCA). In 2004, Versata licensed its software to Ford and entered into an agreement called the Master Subscription and Services Agreement (MSSA). The parties also entered a separate

but related agreement for Versata to provide additional support and services for the software. In 2014, when the MSSA was set to expire, the parties were unable to agree on extension terms. Instead of renewing the MSSA, Ford released its own manufacturing configuration software, called PDO, which Ford had developed while licensing software from Versata.

Soon after PDO's release, Ford sought a declaratory judgment that it had not infringed upon Versata's intellectual property rights or misappropriated Versata's trade secrets. J.A. 1012–20 ¶¶ 61–101. Versata filed counterclaims against Ford, alleging—as relevant to this appeal—trade secret misappropriation under both the Defend Trade Secrets Act (DTSA) and the Michigan Uniform Trade Secrets Act (MUTSA), as well as a breach of contract claim under Michigan law. J.A. 7084–104 ¶¶ 136–139, 148–156, 160–166.

In its counterclaims, Versata alleged that Ford misappropriated ACM, which it claimed was comprised of three interdependent "combination" trade secrets: Grid, Buildability, and Workspaces. "Grid" is responsible for ACM's user interface and allows users to make edits to certain automotive features and understand how the configuration rules interact with other features of the vehicle. *See* J.A. 56161, 52:14–23. "Buildability" is ACM's "core computing brain" that generates part combinations. J.A. 56168, 79:24; *see* J.A. 56161, 52:24–53:5. And "Workspaces" allows Ford employees to access the same workspace from anywhere in the world, which encourages collaboration. *See* J.A. 56161, 53:6–14; J.A. 56172, 94:25–95:14. Versata also alleged that Ford misappropriated the MCA: a piece of Versata's software that is responsible for taking the ACM configuration data and determining part costs for a particular vehicle build. *See* J.A. 56161, 53:20–54:4; J.A. 56173, 101:7–18.

During pre-trial proceedings, the district court excluded the testimony of Versata's damages expert, Craig Elson, on trade secret damages. *Ford Motor Co. v. Versata Software, Inc.*, No. 15-cv-11624, 2018 WL 10733561, at *8 (E.D. Mich. July 9, 2018) (*Daubert Decision*). The district court excluded Mr. Elson's testimony for several reasons, but primarily because Mr. Elson's proposed testimony "applied a damages model that [was] not an appropriate fit for this case." *Id.* The court concluded that Versata's damages model was flawed because "it measures Ford's enrichment rather than Ford's *unjust* enrichment." *Id.* The district court further held that Mr. Elson's damages model "would award Versata far more than the fair price it deemed Ford should pay in exchange for the software's benefits" and "confer upon Versata a huge and undeserved windfall." *Id*. The district court also opined that, even if Versata were allowed to seek unjust enrichment damages, it would still exclude Mr. Elson's report because it failed to apportion Versata's claimed damages and because Mr. Elson based his analysis on outdated and irrelevant data. *Id.* at *10–13. Finally, the district court also determined that Versata's trade secret damages "*must* be measured with reference to the parties' licensing history." *Id.* at *8 (emphasis added). Over Versata's objection, the district court limited Versata's recovery of damages "to a reasonable royalty model of damages that is based upon the parties' relevant business history," and it precluded Versata from seeking damages "based upon the alleged value of benefits obtained by Ford through its use of the relevant software." *Id.* at *10.

Versata asked the court for leave to revise its damages reports in light of the *Daubert Decision*. J.A. 26753. The district court allowed Versata to submit a supplemental report to cure other identified defects so long as Versata confined itself to a reasonable-royalty model. *See* J.A. 26970–75. Versata then submitted three reasonable-royalty models based on the *Georgia-Pacific* factors, each

of which reflected "a hypothetical negotiation in 2011 between Ford and Versata related to Versata's license of the asserted trade secrets to Ford." J.A. 28376 ¶ 190; *see Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The district court admitted one of the damages models, which calculated a royalty "based solely on the parties' licensing history," but excluded the other two models because they "included additional damages related to the value to Ford of using the trade secrets." J.A. 94–95.

The district court held a jury trial on Versata's trade secret and breach of contract claims in October 2022. The jury found that Ford breached the MSSA and misappropriated the three ACM trade secrets. J.A. 98–102. The jury did not find that Ford misappropriated the MCA trade secret. J.A. 103–04. The jury awarded Versata $22,386,000 for trade secret misappropriation based on the parties' licensing history and $82,260,000 for breaching the MSSA. *See* J.A. 98–99, 100–02.

Following trial, Ford moved for judgment as a matter of law (JMOL) on liability and damages. J.A. 41946–83. The district court upheld the jury's verdict that Ford misappropriated Versata's trade secrets and breached the MSSA. *Versata Software, Inc. v. Ford Motor Co.*, No. 15-cv-11264, 2023 WL 3175427, at *7–8, *12 (E.D. Mich. May 1, 2023) (*JMOL Decision*), *modified*, 2023 WL 8622001 (E.D. Mich. June 8, 2023).[1] However, the district court reduced the jury's damages award for trade secret misappropriation from $22,386,000 to $0 because "the jury had no way to reliably determine how long it would have taken Ford to develop the three (out of four) trade secrets that it found to have been misappropriated." *Id.* at *16, *19. It also reduced the breach-of-contract

[1] The modification of the JMOL decision is immaterial to the merits of this opinion.

damages from $82,260,000 to $3 because "the jury had no way to calculate Versata's claimed breach of contract damages with reasonable certainty." *Id.* at *8, *11.

Versata timely appeals, challenging the district court's limiting of its recovery of unjust enrichment damages, as well as the district court's reductions to the jury awards. Ford timely cross-appealed, challenging the district court's determination on liability for trade secret misappropriation. We have jurisdiction over both appeals pursuant to 28 U.S.C. §§ 1291, 1295(a)(1). Though the patent claims were dismissed with prejudice, J.A. 41267–68, we have jurisdiction over the entire appeal of the final judgment. *See Raytheon Co. v. Indigo Sys. Corp.*, 895 F.3d 1333, 1339 (Fed. Cir. 2018).

## II

For issues not unique to patent law, we apply the law of the regional circuit. *Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350, 1354 (Fed. Cir. 2013). On appeal, Versata argues that the district court erred by (1) limiting Versata's recovery of trade secret damages; (2) reducing the jury's trade-secret $22 million damages award to $0; and (3) reducing the jury's $82 million breach of contract damages award to $3. Ford cross appeals, challenging the district court's denial of its motion for JMOL on liability for trade secret misappropriation. We address each in turn.

### A

We first address Versata's argument that the district court abused its discretion when it precluded Versata from seeking damages under an unjust enrichment theory. The Sixth Circuit reviews a district court's decision to exclude expert testimony for an abuse of discretion. *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 915 (6th Cir. 2009). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Newell*

*Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (cleaned up). Versata argues that under both the Defend Trade Secrets Act and Michigan Uniform Trade Secrets Act, it is allowed to pursue unjust enrichment damages as a matter of statutory right. We agree with Versata that it was entitled to pursue unjust enrichment damages; the district court legally erred when it precluded Versata from doing so.

Both the DTSA and MUTSA allow a plaintiff to seek unjust enrichment damages. The DTSA states that a court may award:

> (i)
>
> > (I) damages for actual loss caused by the misappropriation of the trade secret; and
> >
> > (II) *damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss*; or
>
> (ii) in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret.

18 U.S.C. § 1836(b)(3)(B)(i)–(ii). The MUTSA states that damages may include:

> both the actual loss caused by misappropriation *and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss*. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

Mich. Comp. Laws § 445.1904 (emphasis added). Thus, the plain language of both the DTSA and the MUTSA allow for unjust enrichment caused by the misappropriation of the trade secret that is not accounted for when calculating damages for actual loss.

Further, the language of the MUTSA is nearly identical to that of the Kentucky Trade Secrets Act, under which the Sixth Circuit already recognized the availability of unjust enrichment damages. *See Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 392 (6th Cir. 2022) ("In trade-secrets cases, '[d]amages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.'" (citing Ky. Rev. Stat. § 365.884(1))). And others of our sister circuits have also recognized that a plaintiff may seek unjust enrichment damages to remedy trade secret misappropriation. In *Russo v. Ballard Medical Products*, 550 F.3d 1004, 1020 (10th Cir. 2008), the Tenth Circuit rejected the appellee's argument that unjust enrichment damages were inappropriate under the Utah Trade Secrets Act when "the plaintiff was willing to license his or her idea." Indeed, the *Russo* court explicitly held that under the Utah Trade Secrets Act, which includes the same language as the DTSA and MUTSA, "a plaintiff has the express choice of seeking unjust enrichment damages to remedy trade secret misappropriation." *Id.* at 1021; *see also* Utah Code Ann. § 13-24-4(1) ("[A] complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss."). The court further acknowledged that although unjust enrichment damages "put [the plaintiff] in a much better position than if he had entered a licensing agreement . . . under Utah law, [defendant], as the party that acted wrongfully, must assume the risk it took by misappropriating rather than licensing [the trade

secret].” 550 F.3d at 1021. Similarly, when the Eleventh Circuit analyzed the availability of unjust enrichment damages under the Missouri Trade Secrets Act—which also uses identical language to the DTSA and MUTSA—the court relied upon *Caudill* and *Russo* to recognize unjust enrichment recovery as “separate and distinct” from a jury award for breach. *Al. Aircraft Indus., Inc. v. Boeing Co.*, 133 F.4th 1238, 1252–53 (11th Cir. 2025); *see also* Mo. Ann. Stat. § 417.457.1 (“[A] complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.”). We find these decisions persuasive and conclude that Versata may seek unjust enrichment damages under the DTSA and the MUTSA as a matter of law.

The district court’s reliance in this case on precedent where the parties’ licensing history was used to calculate damages to categorically preclude recovery of unjust enrichment damages is misplaced. As noted above, after the district court excluded Mr. Elson’s expert testimony, it required Versata to measure damages based on the parties’ licensing history. *See Daubert Decision*, 2018 WL 10733561, at *8–10. The district court reasoned that “in ‘most cases,’ the ‘proper measure’ of trade secret misappropriation damages involves ‘calculat[ing] what the parties would have agreed to as a fair price for . . . licensing the defendant to put the trade secret to the use the defendant [intended] at the time the misappropriation took place.’” *Id.* at *8 (first alteration in original) (quoting *Univ. Computing Co. v. Lykes–Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir.1974)). The district court then relied upon two Sixth Circuit decisions to conclude that “the proper measure of damages in this case should be based upon the parties’ licensing history.” *Id.* at *9 (first applying *Vitro Corp. of Am. v. Hall Chem. Co.*, 292 F.2d 678, 680–682 (6th Cir. 1961); and then applying *Mid-Michigan Comput. Sys., Inc.*

*v. Marc Glassman, Inc.*, 416 F.3d 505, 507–510 (6th Cir. 2005)).

We disagree with the district court's reading of Sixth Circuit precedent. Though the Sixth Circuit did uphold damages awards that were calculated using royalties-based damages models in *Vitro Corp.* and *Mid-Michigan*, it did not preclude the plaintiff from seeking unjust enrichment damages altogether. In *Vitro Corp.*, the Sixth Circuit reviewed a district court's award of damages based on a special master's determination that the proper method of determining damages was an "established royalty" computation based on the minimum amounts that the parties had agreed to in principle for the trade secrets. 292 F.2d at 682. On appeal, the plaintiff argued that the district court's decision to base its award on the agreement in principle was erroneous. *Id.* The Sixth Circuit disagreed, finding that this was the "best evidence" of an equitable measure of damages. *Id.* at 683. But neither the district court nor the Sixth Circuit disallowed the plaintiff from pursuing unjust enrichment damages as a matter of right as the district court did here.

The Sixth Circuit's holding in *Mid-Michigan* also does not support the district court's exclusion. In *Mid-Michigan*, the plaintiff licensed software to the defendant and later accused the defendant of reverse engineering its source code to develop their own software. 416 F.3d at 507. The plaintiff successfully sued for trade secret misappropriation, and the jury awarded $2 million in damages based on a reasonable royalty model partially rooted in the parties' licensing history. *Id.* at 509–511. On appeal, the Sixth Circuit upheld the damages award, declining to disturb the jury award because "the $2 million compensatory damages award was neither clearly excessive nor conscience-shocking" in light of the parties' agreement. *Id.* at 512. *Mid-Michigan* therefore also did not preclude the availability of unjust enrichment damages.

Here, however, when Versata argued that damages may be awarded based on "the value derived from the savings because of increased productivity, or the value derived from savings in research costs," rather than the parties' licensing history, the district court concluded that alternative measurements of damages were only appropriate when the trade secret damages are not "subject to exact measurement." *Daubert Decision*, 2018 WL 10733561, at *9 (first citing *Avery Dennison Corp. v. Four Pillars Enter., Co.*, 45 F. App'x 479, 485–86 (6th Cir. 2002); and then citing *Univ. Computing*, 504 F.2d at 538–39). Not so. The plain language of the DTSA and MUTSA expressly allows complainants to pursue unjust enrichment damages for trade secret misappropriation.

Ford attempts to argue that the district court did not preclude Versata from seeking unjust enrichment damages altogether, but instead only precluded Versata from pursuing unjust enrichment damages that were speculative and unreliable. We are unpersuaded by this characterization for two reasons. First, the district court expressly stated that Versata was confined to seeking damages directly tied to the parties' licensing history. *Daubert Decision*, 2018 WL 10733561, at *8 ("In order to avoid such a windfall, Versata's trade secret damages in this case must be measured with reference to the parties' licensing history."). Second, the district court excluded two of Versata's damages models because they did not *solely* calculate damages based on the parties' licensing history. J.A. 9495. Thus, the district court erred when it precluded Versata entirely from pursuing unjust enrichment damages.

The district court's preclusion of unjust enrichment damages impacted Versata's ability to seek damages throughout this case, including at trial and during post-trial proceedings. Accordingly, we partially vacate the district court's JMOL zeroing out the jury's damages award and remand for a new trial on damages for trade secret misappropriation. We also instruct the district court to

reconsider Versata's reasonable-royalty models it previously excluded because they were not solely based on the parties' licensing history.

B

We now turn to the district court's reduction of the jury award of breach of contract damages. In the Sixth Circuit, decisions on motions for JMOL are reviewed de novo. *See Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 602 (6th Cir. 2018). "The motion may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012) (quoting *Radvansky v. City of Olmsted Falls,* 496 F.3d 609, 614 (6th Cir. 2007)). The Sixth Circuit's review of a jury's damage award is "extremely deferential," and it "will not order a remittitur or new trial unless the award is contrary to all reason." *Advance Sign Grp., LLC v. Optec Displays, Inc.*, 722 F.3d 778, 787 (6th Cir. 2013) . "An award must stand unless it is: (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake." *Id.*

Versata argues that the district court erred in reducing the jury award because it presented sufficient evidence for the jury to accurately calculate damages. We agree and conclude that the district court erred when it reduced the jury award from $82,260,000 to $3. Accordingly, we reverse the district court's JMOL Decision and reinstate the jury award for breach of contract damages.

The district court found that while Versata established that Ford breached the MSSA, "it did not present sufficient evidence to permit the jury to quantify those damages in compliance with Michigan law." *JMOL Decision*, 2023 WL 3175427, at *8. Under Michigan law, damages for a breach of contract claim must be measured with "reasonable

certainty," *Doe v. Henry Ford Health Sys.*, 865 N.W.2d 915, 922 (Mich. App. 2014), but "mathematical certainty" is not required, *Chelsea Inv. Grp., LLC v. Chelsea*, 792 N.W.2d 781, 792 (Mich. App. 2010). But the district court concluded that Versata failed to present *any* evidence to aid the jury in calculating its breach of contract damages with reasonable certainty. *See JMOL Decision*, 2023 WL 3175427, at *8. We disagree.

At trial, Versata's counsel presented three base damages amounts based on the parties' licensing history: $17 million, $14.95 million, and $10.95 million. The $17 million per year figure was based on the amount Versata offered to license its software to Ford after its previous agreement ended. The $14.95 million figure represented the amount that Ford paid Versata in its final year of the MSSA. J.A. 57008,126:9–126:20. Last, the $10.95 million figure was the cost of the base license fee under the MSSA, which allowed Ford to use the software without "support and maintenance payments" included in the $14.95 million figure. J.A. 57008, 126:21–127:3. Versata's counsel instructed the jury to multiply any of the three figures by 7.5 years—the period from the start of Ford's misappropriation through trial. J.A. 57007–08, 124:4–125:21. Ultimately, the jury awarded Versata $82,260,000, which equates to approximately $10.97 million for each year of the 7.5 years that Ford breached the MSSA. *See* J.A. 98–99. This amount was not beyond the range supported by proof, which ranged from $82.125 million ($10.95 million per year x 7.5 years) to $127 million ($17 million per year x 7.5 years). Nor was the damages award so excessive as to shock the conscience.

When the district court granted Ford's motion for JMOL on breach of contract damages, it rejected Versata's arguments that the jury award should be upheld. It rejected Versata's claim that the jury awarded damages as a reasonable royalty because "it is not clear that Michigan recognizes a reasonable royalty theory of contract

damages" and "even if Michigan did recognize such a theory of contract damages . . . Versata presented no evidence at trial to support a reasonable royalty theory of contract damages." *JMOL Decision*, 2023 WL 3175427, at *10 (citing *Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC*, 912 F.3d 316, 347 (6th Cir. 2018)). It also rejected Versata's "lost profits" calculation of breach of contract damages because Versata failed to disclose this theory during discovery and did not present sufficient evidence at trial. *Id.* at *11. Finally, the district court rejected Versata's argument that the damages award should nonetheless stand, regardless of whether there is some uncertainty as to the amount of its damages, because under Michigan law "the risk of uncertainty is cast upon the wrongdoer, not the injured party." *Id.* Here, the district court claimed that "Versata's contract damages case crossed the line from uncertainty to speculation," and as a result ultimately vacated the jury award. *Id.*

We find that the jury calculated damages with reasonable certainty. Because the jury award closely aligns with the $10.95 million figure, we focus on the district court's analysis of that figure. The district court rejected the $10.95 million per year calculation because Versata failed to separate out its costs of performance associated with the base license. *Id.* at *10. But Versata's expert explained the differences between the $10.95 million base license fee, and the $14.95 million license fee, which included extended support and services.[2] *See, e.g.*, J.A. 56576, 12:8–13:20 (explaining that the $10.95 million base licensing fee consisted of $8.45 million for the ACM and $2.5 million for the MCA); *see also* J.A. 56577, 15:1–16:8 (explaining that the $14.95 million licensing fee included $4 million for "support

---

[2] Mr. Elson was unavailable for trial due to a medical emergency, so Renee McMahon served as Versata's testifying damages expert. J.A. 39921.

services" such as the "Extended Support and Maintenance Service Agreement"). Versata also submitted two versions of the MSSA to the jury: the original contract from 2004, which included support and enhancement services, and the 2011 addendum, which states "Versata shall no longer provide generally available Support and Enhancements for [ACM]." J.A. 71630–31, 71643. In addition to Versata's expert testimony, Ford's own damages expert acknowledged that the $10.95 million figure was a "much more reasonable starting point, because it takes out that $4 million of other types of fees and services and support and maintenance." J.A. 56805, 96:14–97:4. And at no point did Ford demonstrate that it was beyond dispute that there were additional costs associated with the base license. Finally, Versata's counsel explained to the jury how to calculate damages during closing arguments. *See* J.A. 57007–08, 124:14–127:7. We therefore conclude that the district court erred when it determined that Versata did not present *any* evidence that would allow the jury to calculate damages with reasonable certainty. Versata's and Ford's expert testimony, the submission of the MSSA and the 2011 addendum, and the jury instructions given by Versata's counsel during closing arguments all amount to sufficient evidence that provided the jury with a discernible path to properly calculate damages. Accordingly, we reverse the district court's reduction of breach of contract damages and reinstate the jury award of $82,260,000 to Versata.

## III

We next turn to Ford's cross-appeal of the district court's denial of JMOL on its liability for trade secret misappropriation. Ford's argument before us is narrow: it argues that Versata failed to show that at the time of disclosure or use, Ford knew of the *specific* combination trade secrets at issue. As the Sixth Circuit has explained, a combination trade secret is "[a] new combination of known steps or processes [that] can be entitled to trade secret protection." *Caudill*, 53 F.4th at 380 (cleaned up).

Here, Ford argues that "Versata offered insufficient evidence that Ford had knowledge of each alleged combination trade secret." Appellee Response Br. 24. That is, Ford claims that Versata provided no evidence that it identified the specific "bundles of features [Grid, Buildability, and Workspaces of the ACM software] to Ford" but instead provided hundreds of documents to Ford containing these trade secrets. *Id.* at 68; *see id.* at 68–72. Therefore, because Versata failed to demonstrate that Ford had specific knowledge of the ACM combination trade secrets, Ford argues that the district court's judgment on trade secret liability must be reversed. Neither the DTSA nor the MUTSA, however, requires a plaintiff to show a defendant's knowledge of specific elements of combination trade secrets. We therefore decline to require such a showing in the instant case and affirm the district court.

We begin with the statutory language of the DTSA and MUTSA. We recite the relevant part of the DTSA, which defines misappropriation as:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>
> > (i) used improper means to acquire knowledge of the trade secret;
> >
> > (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
> >
> > > . . . .
> > >
> > > (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or

> limit the use of the trade secret . . . .

18 U.S.C. § 1839(5). The MUTSA has similar requirements:

> (A) Used improper means to acquire knowledge of the trade secret.
>
> (B) [a]t the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.

Mich. Comp. Laws § 445.1902(b)(ii)(A)–(B). Neither the DTSA nor the MUTSA requires specific knowledge of the combination trade secret elements. Both statutes define misappropriation as use of a trade secret by one who acquired knowledge of the trade secret by improper means or received knowledge of the trade secret under circumstances giving rise to secrecy. 18 U.S.C § 1839(5)(B)(i), (ii)(II); Mich. Comp. Laws § 445.1902(b)(ii)(A)–(B). Nothing in the language of either statute requires the degree of specific knowledge of the exact combination of a trade secret that Ford urges us to read in. Notably, the Sixth Circuit rejected a similar argument for a heightened knowledge requirement for combination trade secrets in *Caudill*. 53 F.4th at 385 (rejecting appellant's argument that "trade-secrets law requires showing acquisition of each atom of a combination trade secret"). We see no reason to insert such a requirement here under Michigan law and decline to do so.

On Ford's motion for JMOL, the district court found that the evidence, taken in the light most favorable to Versata, was sufficient to support a finding that Versata

disclosed the ACM combination trade secrets to Ford. *JMOL Decision*, 2023 WL 3175427, at *12. We agree. The district court credited Versata's technical expert, Dr. Samuel Malek, finding that "[h]e repeatedly testified at trial that Versata disclosed the trade secrets *as combinations* to Ford through its user guides and presentations to Ford." *Id.* (footnote omitted). The district court also credited the testimony of former Versata employee Seth Krauss, who testified that Versata "disclosed [ ] all of the [combination trade secrets] information" through various materials like manuals, technical documents, emails, onsite discussions, as well as the software itself. *Id.* (citing J.A. 56174, 104:12–17). The district court also determined that "Versata presented evidence that its manuals and presentations were given to Ford's engineers and other employees with technical expertise." *Id.* On these bases, we conclude that Versata presented sufficient evidence to support its claim for trade secret misappropriation. We therefore affirm this aspect of the district court's judgment.

## IV

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm-in-part, vacate-and-remand-in-part, and reverse-in-part the district court's *JMOL Decision*. We further remand to the district court for a new trial on damages for trade secret misappropriation and reconsideration of the damages models previously excluded.

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED**

COSTS

Costs to Appellants.